273 So.2d 617 (1973)
In the Matter of the SUCCESSION of Louis Duke MATERISTE.
No. 9149.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
Rehearing Denied March 14, 1973.
*618 Cecil N. Bankston, Baton Rouge, for appellant.
Carlos G. Spaht, Kantrow, Spaht, Weaver & Walter, Baton Rouge, for appellee.
Before LOTTINGER, ELLIS and CRAIN, JJ.
CRAIN, Judge.
The case before us involves a petition to annul a probated will. The testatrix, Myrtle Louise Duke Materiste, left no children and was survived only by her mother, Mamie Hinson Duke, and eleven brothers and sisters. Mrs. Duke filed this suit first claiming that she is entitled to her forced portion as mother of the deceased. This right was recognized. Mrs. Duke also attacked the validity of the testament itself on several groundsthe primary ground being that it contains prohibited substitutions. The brothers and sisters mentioned above intervened adopting basically the same position as that taken by Mrs. Duke. The trial court decided the matter on a motion for summary judgment holding that certain provisions contained in a trust section in the testament are prohibited substitutions. *619 In his final decree the trial court expunged the language he considered to create an illegal substitution from the will retaining the remainder of the will, and also the remainder of the particular disposition where he found the substitutions. Both parties appealed.
The pertinent provisions of the testament are contained in the paragraph in the testament marked, "Second" and read as follows:
"SECOND: I will and bequeath unto the Fidelity National Bank of Baton Rouge, Baton Rouge, Louisiana, as Trustee, the following described property:
ONE CERTAIN TRACT OR PARCEL OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of East Baton Rouge, State of Louisiana, on the new Baton Rouge-Hammond Highway (now known as Florida Street) containing one (1) acre and being particularly described and designated according to a survey prepared by A. G. Mundinger, Civil Engineer and Surveyor, dated June 24, 1940, and being the same property acquired by me and my late husband, Joseph Materiste, by act of record in Conveyance Book 445, Folio 297 of the conveyance records of this Parish and State.
"This property above described joins and forms a part of a two (2) acre tract, the other acre being owned by the family of the late Charles Materiste, and it is my desire that the Trustee work with the Charles Materiste family in leasing said property for commercial uses. This has been my desire and the desire of the Charles Materiste family for some time.
"The income beneficiaries of said Trust shall be as follows:
"One-half (½) unto Mamie Hinson Duke, my mother, as long as she may live, and one-half (½) unto my brothers and sisters by root, who are as follows:
"Peggy D. Stockwell; Alice D. Akins; Wiley F. Duke; June D. Dood; Beverly D. Tucker; Jack D. Duke; William P. Duke; Earl L. Duke; Benjamin D. Duke; Margaret D. Farmer; and Judy D. Pratt.
"Upon the death of my mother, I name and appoint as income beneficiaries in her stead in equal portions the children of Anna Materiste Roppolo, the late Peter J. Materiste and the late Charles Materiste, who are as follows: Anthony J., Jeanette, Virginia and Charles Roppolo; Peter, Jr., Salvador and Virginia Materiste Cado; and Virginia Ann Buriege. If any of these nephews and nieces of mine by marriage die, his or her share in the income and corpus of this trust shall be divided among the survivors.
"This trust is to continue as long as any of my brothers and sisters live. Upon the death of the last one of my brothers and sisters, this Trust shall terminate and the corpus shall be divided as follows:
"Forty-five (45%) per cent among the descendents of my brothers and sisters by root. If any of my brothers or sisters does not leave descendents, then that portion shall go to the descendents by roots of the brothers and sisters who do leave descendents.
"Forty-five (45%) per cent to the children of Anna Materiste Roppolo, the late Peter J. Materiste and the late Charles Materiste, who I have named above as income beneficiaries upon the death of my mother.
"Ten (10%) per cent to the St. Aloysius Catholic Church.
"The Trustee shall have the authority set forth in the Louisiana Trust Code for Trustees."
The first contention made by plaintiff-appellant and the intervening brothers *620 and sister in the lower Court is that the trust fails to specify principal beneficiaries. They therefore argue that the ownership of the corpus of the trust belongs to them as legal heirs. Consequently, they argue the subsequent disposition of the corpus of the trust at termination of the income trust is an invalid substitution. The trial court dealt with this argument in his reasons for judgment as follows:
"To give effect to the plaintiffs' argument that the will contains prohibited substitutions, it is necessary for the Court to assume that the mother and brothers and sisters of the testatrix became the naked owners of the property subject to the trust by operation of law at the death of the testatrix. This is not a valid assumption. While the testament does not specifically name who the principal beneficiaries of the trust are, nevertheless, those who are to take at the termination of the trust comfortably satisfy the definition of a principal beneficiary. That definition is found in LSA-R.S. 9:1725(4) and is set forth as follows:
(4) `Principal beneficiary' means a beneficiary presently, conditionally, or ultimately entitled to principal." (Emphasis supplied)
On this question, we feel that the trial judge was correct.
The initial paragraphs of the trust provisions created successive income beneficiaries. The trial court held that the creation of these successive income beneficiaries does not create prohibited substitutions. This holding is also correct. When confronted with the question of successive income beneficiaries, the courts of this state have repeatedly held that they do not create prohibited substitutions. This holding has been most recently reiterated in Crichton v. Succession of Gredler, 256 La. 156, 235 So.2d 411 (1970).
The trial judge did find two prohibited substitutions in the testament. The first was discovered in the following language:
"If any of these nephews and nieces of mine by marriage die, his or her share in the income and corpus of this trust shall be divided among the survivors."
The trial court held that the above provision creates successive principal beneficiaries and for that reason results in a prohibited substitution. The trial court cited for authority, Crichton v. Succession of Gredler, cited above, and Succession of Walters, La.App., 243 So.2d 324.
Defendant-appellees do not dispute the holding by the trial court that a provision creating successive principal beneficiaries contains an illegal substitution. However, they admirably argue that a fair reading of the testament as a whole will demonstrate that the above provision was only intended to create successive income interest which are sanctioned by law.
The law relative to interpretation of testaments where an attack has been made upon its provisions as containing illegal substitutions has been clearly set forth by the Louisiana Supreme Court in Succession of Feitel, 176 La. 543, 146 So. 145 (1933), at 146 wherein the Court stated the rule as follows:
". . . Our predecessors held long ago that, `Substitution and fidei commissa are never presumed; they must be expressed, or clearly result from the sense and signification of the words used in the instrument, which contains them.' (Arnaud v. Tarbe, 4 La. 502), and `unless the will necessarily presents a substitution, and can be understood in no other manner, the disposition will be sustained.' (Succession of Ducloslange, 4 Rob. 409), and `in cases of doubt whether a will presents a substitution or not, it should be maintained.' (Cole's Heirs v. Cole's Ex'rs, 7 Mart.N.S. 414)...."
*621 It is clear that considering the testament as a whole, the above quoted provision does not necessarily require that successive principal interest be created. Instead the provision is very easily interpreted to refer to income interest only. The entire paragraph from which the disputed language is extracted reads as follows:
"Upon the death of my mother, I name and appoint as income beneficiaries in her stead in equal portions the children of Anna Materiste Roppolo, the late Peter J. Materiste and the late Charles Materiste, who are as follows: Anthony J., Jeanette, Virginia and Charles Roppolo; Peter, Jr., Salvador and Virginia Masteriste Cado; and Virginia Ann Buriege. If any of these nephews and nieces of mine by marriage die, his or her share in the income and corpus of this trust shall be divided among the survivors." (Emphasis supplied)
The obvious import of the above language is for the nieces and nephews of the deceased to be substituted as income beneficiaries of the trust on the death of the mother of the testatrix. To hold otherwise would require ignoring the precise language that they are appointed as "income beneficiaries." It would further require that the disputed sentence be lifted out of context from a portion of the will specifically dealing with income beneficiaries, and be considered in conjunction with principal beneficiaries contained in another segment of the disposition.
The use of the word corpus is unfortunate. However, there is a plausible interpretation which will not result in the creation of successive principal beneficiaries. Thus the trial court was in error in finding a prohibited substitution in this particular disposition.
The trial court next found a prohibited substitution in the following provision:
"This trust is to continue as long as any of my brothers and sisters live. Upon the death of the last one of my brothers and sisters, this trust shall terminate and the corpus shall be divided as follows:
Forty-five (45) per cent among the descendents of my brothers and sisters by root. If any of my brothers or sisters does not leave descendents, then that portion shall go to descendents by roots of the brothers and sisters who do leave descendents." (Emphasis added)
The Court reasoned the above provision of the trust was so broad that it could be reasonably interpreted to require that after the creation of the trust by the death of the testatrix the principal interest of a descendent thereafter dying would go to the remaining descendents, thus creating a shift in the principal interest after creation of the trust. Also the trial Court found that the birth of a descendent after the creation of the trust would require the vesting of a principal interest in the new descendent again resulting in a shift in the principal interest, and therefore the creation of successive principal beneficiaries. For these reasons he found that the provision set forth above contained a prohibited substitution.
First, we find error in the trial court's reasoning in reaching his conclusion. The trial court found that the provision could be reasonably interpreted to contain a prohibited substitution. However, the law requires that a prohibited substitution not be found unless the only plausible understanding of the provision in question leads necessarily to that conclusion. Such is not the case here.
Under LSA-R.S. 9:1971 the interest of the principal beneficiary is acquired immediately upon the creation of the trust, and in the case of a testamentary trust, the event creating the trust is the death of the testatrix. Thus the identity of all principal beneficiaries is determined at the death of *622 the testatrix, and the principal of the trust will be divided accordingly.
To read an illegal substitution into the language at issue would require that the disposition be interpreted in a way that the principal of the trust would not vest in the principal beneficiaries of the trust when the law says it must, upon the death of the testatrix, but rather at a point after her death. Once the entire trust disposition is found to provide for principal beneficiaries, the interest of those beneficiaries vest when the law says it must. Thus the contested provision can only be interpreted to vest 45% of the principal of the trust to the descendents of the brothers and sisters who are in existence at the time of the death of the testatrix. It logically follows that if there are brothers and sisters who do not have descendents at the time of the creation of the trust, the death of the testatrix, then the principal that would have gone to those descendents goes to those in existence.
It is presumed that the testatrix does not intend to make an invalid disposition. Therefore the only reasonable interpretation of the provision would be that she intended to provide contingencies for circumstances occurring before the trust comes into existence. This is expressly permitted by Article 1521 of the Civil Code as a vulgar substitution. Where there is doubt as to whether a disposition creates a prohibited substitution or merely a vulgar substitution, it must be held that the testatrix intended to provide for the latter. (Succession of May, 109 La. 994, 34 So. 52 (1903); Swart v. Lain, 160 La. 217, 106 So. 833 (1926).
Since we find that there are no prohibited substitutions contained in the trust provision of the testatment, the trial court must be reversed in this respect. It is therefore unnecessary for this Court to consider any additional arguments which would be posed if prohibited substitutions were found to exist.
The judgment of the trial court is affirmed in all respects except with reference to the finding of prohibited substitutions in the will and expunging the language of such therefrom. In those instances, the judgment of the trial court is reversed.
Affirmed in part, reversed in part, and rendered.